## SERFOSS *v.* FISHER.

A voluntary judgment confessed by one not indebted, but with a design to defeat a supposed liability which did not exist, is rendered fraudulent, as to subsequent creditors, by reviving it by *sci. fa.*, and issuing an execution thereon.

IN error from the Common Pleas of Monroe.

*March* 21. The questions in this cause resolved themselves into one. It was an issue directed by the creditors of Peter Serfoss, to determine whether a judgment confessed by him to his father in 1843, was fraudulent. It was proved that at that time he was indebted in a trifling sum. But there was evidence that this judgment was confessed without consideration, and for the purpose of defeating a supposed liability for the costs of an action brought against a minor son of Peter Serfoss. The plaintiffs were creditors of Peter Serfoss some time subsequently to this judgment, and obtained a verdict on 9th of April, 1846. In March, 1846, a *sci. fa.* on the judgment in question was issued and the judgment revived; and, on the 6th of April, an execution issued, under which Peter Serfoss's property, real and personal, was sold by the sheriff

to Lawrence Serfoss, the plaintiff in the judgment—but the possession remained unchanged. There was evidence of the declarations by Lawrence Serfoss to purchasers of land from Peter, that he intended to lift the judgment, but when he was at Stroudsburg (the county town), he always forgot it. And also, that there was nothing due on the judgment, it having been paid—but the case was left to the jury, on the supposition that the judgment was voluntary.

*Reeder*, for the plaintiff in error.—The judgment was valid between the parties at all times, and as to all the world, at the time it was confessed. How, then, can subsequent matters make it fraudulent? The execution, &c., are but means of enforcing that which was valid. Subsequent indebtedness cannot make a gift fraudulent when it was not contemplated at the time: nor were these creditors intended to be defrauded.

*J. M. Porter*, contrà.

His honour, KIDDER, P. J., instructed the jury that the judgment, if without consideration, though valid as between the parties, yet, if afterwards used for the purpose of hindering, delaying, or defrauding subsequent creditors, would become fraudulent and void so far as it affected them.

*April* 3.   COULTER, J.—Several of the points submitted to the court below are more speculative than adapted precisely to meet the facts, and are framed with some adroitness, and might have entangled the court in a mesh of subtlety. In the main, however, there was no error. The knot would have been cut by an instruction to the jury, that a judgment, or bond, or other security, may, after it is satisfied, be kept on foot for fraudulent purposes; and, in that aspect, it comes within the statute of 13 Eliz., as effectually as if originally contrived to delay or hinder creditors. [His honour here referred to the issue and evidence.]

Under these circumstances, if the jury believe, that the judgment of Lawrence, which is now contested, was paid, and afterwards revived by *scire facias*, and kept on foot, and execution issued, with the view and purpose of defeating the impending judgments and executions of honest creditors, it was a device within the statute of Elizabeth, and void against those creditors whom it was intended to defeat.

Because, of whatever seeming the whited device may be, if it is contrived for the purpose of defeating or hindering creditors, it is

void.    Otherwise, the statute itself would become the victim of the very devices and cheats it was intended to prevent.

In such cases, the character of the device is referred to the time when it is used for the purpose of fraud; and, if then false and feigned, it is fully within the interdict of the statute and the provisions of the common law.    For, that which is beautiful and true in its origin, may become foul by subsequent events, either performed by principals, agents, or instruments.

The objection to the admission of the *fi. fa.* in evidence, on which the personal property was sold, is without any solid foundation.    It is true, as alleged, that a judicial sale imports, *primâ facie*, honesty and fairness, and lifts away the necessity of a removal of the goods.    That is, it removes the conclusion of legal fraud, from the fact of the goods having been left in the possession of the original owner.    But there may, notwithstanding all this, be proof of actual fraud in the transaction: and that was the allegation here.

In the process of such proof, the legal sale will weigh in favour of the fairness of the transaction, but is far from being conclusive. The sale must take its character of being actually fraudulent, or not, from all the facts in evidence.

But the *fi. fa.* was part of the *res gestæ*—part of the very transaction out of which the controversy arose, and part of the record which was in evidence.

There was no error, in the main, in the charge of the court below. I consider all the points raised by the counsel in error, as met by the foregoing considerations.

Judgment affirmed.